FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 02, 2023

SEAN F. McAVOY, CLERK

1
2
3
4
5                  UNITED STATES DISTRICT COURT

6                  EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| 7 ESTATE OF JONNY TORRES, by and through his Personal Representative Manuel Banda; JAMIE VALENCIA, parent of Jonny Torres; MARIA M. TORRES, parent of Jonny Torres, | No. 4:19-CV-05038-MKD |
| Plaintiffs, | ORDER GRANTING DEFENDANTS CITY OF KENNEWICK, DAVID DAY, ANTHONY MARSH, MARK COOK, AND CHRISTOPHER JOHNSON'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| KENNEWICK SCHOOL DISTRICT NO. 17, a quasi-government agency and agents thereof with knowledge and responsibility; TAMARA VASQUEZ, individually and in her capacity as nurse at Highland Middle School; CITY OF KENNEWICK, d/b/a Kennewick Fire Department and City of Kennewick Ambulance and agents thereof with knowledge and responsibility; and DAVID DAY, ANTHONY MARSH, MARK COOK, and CHRISTOPHER JOHNSON, in their capacity as medical responders for City of Kennewick, | ECF No. 374 |
| Defendants. | |

ORDER - 1

1    Before the Court is Defendants City of Kennewick (the "City"), David Day,

2    Anthony Marsh, Mark Cook, and Christophers Johnson's (collectively the "City

3    Defendants") Motion for Summary Judgment.  ECF No. 374.  On May 11, 2023,

4    the Court held a hearing on the motion.  ECF No. 406.  Marshall Casey and

5    Marcus Sweetser appeared on behalf of Plaintiffs the Estate of Jonny Torres, Jamie

6    Valencia, and Maria Torres (collectively "the Estate").  Joel Comfort appeared on

7    behalf of the City Defendants.  Rachel Platin appeared on behalf of Defendants

8    Kennewick School District No. 17 ("KSD") and Tamara Vasquez (collectively the

9    "KSD Defendants").

10    The Estate pursues claims arising out of the acts and omissions of the City's

11    emergency medical responders in rendering medical aid to decedent Jonny Torres

12    (hereinafter "Torres").  ECF No. 117 at 28-29 ¶¶ 8.1-8.5.  The City Defendants

13    move for summary judgment, arguing that (1) the claims against them expired

14    under the applicable statute of limitations prior to the claims being filed and (2)

15    they are entitled to statutory immunity.  ECF No. 374 at 2.

16    For the reasons stated herein, the Court denies the City Defendant's Motion

17    for Summary Judgment on the statute of limitations grounds and grants the motion

18    on statutory immunity grounds.

19

20

ORDER - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## BACKGROUND

The following facts are not genuinely in dispute.[1]  On September 7, 2017, Torres suffered a severe asthma attack.  ECF No. 375 at 2 ¶ 1; ECF No. 388 at 2 ¶ 1.  At approximately 4:36 p.m., his family called 911.  ECF No. 388 at 2 ¶1.  Defendants Day, Marsh, Cook, and Johnson, all emergency medical responders, arrived at 4:45 p.m.  ECF No. 375 at 2 ¶¶ 2-3; ECF No. 388 at 2 ¶¶ 2-3; ECF No. 376-2 at 7.  Day, and possibly Johnson, entered the Torres home.  ECF No. 388 at 2-3 ¶ 4.  Torres was sitting rigidly and struggling to breath, using an albuterol treatment, his limbs were pale, and he was only able to speak at a whisper, saying "help me."  ECF No. 375 at 2-3 ¶ 4; ECF No. 388 at 2-3 ¶ 4.

---

[1] The City Defendants filed along with their Motion for Summary Judgment a Statement of Material Facts Not in Dispute.  ECF No. 375.  The Estate filed a Statement of Disputed Material Facts and Submission of Undisputed Facts Precluding Summary Judgment.  ECF No. 388.  The City Defendants did not file a Reply Statement of Material Facts Not in Dispute as set forth in LCivR 56(c)(1)(C).  Pursuant to LCivR 56(e), the Court will consider undisputed facts not controverted pursuant to the procedures in LCivR56(c).  *See* Fed. R. Civ. P. 56(e)(2).

ORDER - 3

1    The medical responders, with the help of Torres's father, moved him to a cot

2    placed at the front door, and then to the ambulance.  ECF No. 384-1; ECF No. 388

3    at 2-3 ¶ 4.  While still in the home, Day determined that the medical responders

4    would administer epinephrine intravenously.  ECF No. 388 at 2-3 ¶ 4; ECF No.

5    389-6 at 55:12-22.  At 4:50 p.m., the medical responders departed for Trios

6    Hospital in Kennewick, Washington.  ECF No. 376-2 at 7; ECF No. 375 at 2-3 ¶ 4;

7    ECF No. 388 at 2-3 ¶ 4.

8    While in the ambulance, the paramedics took Torres's vitals.  ECF No. 388

9    at 3-4 ¶ 6.  Day was concerned about his heart rate, which was low, and slow

10   breathing and low oxygen levels.  ECF No. 388 at 3-4 ¶ 6; ECF No. 389-6 at 43:6-

11   16.  The paramedics started to hook up a DuoNeb and Marsh began an IV into

12   Torres's right hand.  ECF No. 389-6 at 52:14-24.  The paramedics started to push

13   epinephrine through the IV as the ambulance began to move.  ECF No. 389-6 at

14   53:1-8.  Marsh administered 0.3 mg of epinephrine over a 30-second window.

15   ECF No. 388 at 3-4 ¶ 6; ECF No. 389-7 at 28:4-7.  Torres began vomiting and

16   seizing and lost consciousness.  ECF No. 384-4 at 3.

17   At 4:58 p.m., the ambulance arrived at the hospital.  ECF No. 388 at 4 ¶ 6;

18   ECF No. 376-2 at 7.  Torres spent 18 days on life support and died on

19   September 25, 2017.  ECF No. 375 at 3 ¶ 7; ECF No. 388 at 4 ¶ 7.

20

ORDER - 4

1
2
3
4
5
6

On or about December 1, 2017, the City produced to the Estate's counsel copies of an 8-page report of care rendered in the ambulance.  ECF No. 375 at 3 ¶ 8; ECF No. 388 at 5 ¶ 8; ECF No. 376-2 at 4-11; ECF No. 384-4 at 2-8.  The records are eight pages of documentation containing a narrative of the event by Day, Torres's vitals, recorded observations, medications given, and heart monitor readings.  ECF No. 376-2 at 4-11.

7
8
9
10
11
12
13

On March 13, 2019, the Estate filed a Complaint against KSD and Nurse Vazquez, alleging that their negligence resulted in Torres's death.  ECF No. 1 at 16-25.[2]  Initial Disclosures from the Estate's counsel, dated as received by KSD's counsel on June 17, 2019, indicate that the ambulance records were in the Estate's possession.  ECF No. 375 at 3 ¶ 10; ECF No. 388 at 5 ¶ 10; ECF No. 376-1.  On February 11, 2021, KSD and Nurse Vasquez moved to amend their Answer to allege that the City Defendants caused Torres's death.  ECF No. 90.  The Estate

14
15
16
17
18
19
20

[2] The background presented in this order is that which is relevant to the City Defendants' Motion for Summary Judgment.  The Estate separately pursues claims against KSD and Nurse Vasquez, a nurse at one of KSD's schools, for wrongful death and survival, school negligence and gross negligence, and under the ADA and Section 1983.  ECF No. 117 at 20-28.

ORDER - 5

opposed, but sought leave to amend its complaint to add the City Defendants in the event that the Court permit an amended answer.  ECF No. 92 at 14.

On May 18, 2021, Judge Peterson granted leave to file an amended answer and amended complaint.  ECF No. 115.  On May 19, 2021, the KSD Defendants filed an Amended Answer to the First Amended Complaint, which alleged that "[t]he damages and injuries claimed by Plaintiffs were caused by the actions and/or inactions of an at-fault non-party – the City of Kennewick" and that "[t]he actions and inactions of the City of Kennewick were the sole proximate cause of the damages and injuries claimed by Plaintiffs herein and/or an intervening/superseding act."  ECF No. 116 at 24 ¶¶ F-G.  On May 24, 2021, the Estate filed a Second Amended Complaint that included claims of medical negligence against the City Defendants.  ECF No. 117 at 28-29 ¶¶ 8.1-8.5.

On June 28, 2021, the City Defendants provided an additional supplemental narrative authored by Day sometime after Torres's death to preserve Day's recollection of the event.  ECF No. 384-1 at 2; ECF No. 395-1 at 14:3-17.

Now, the City Defendants move for summary judgment on all claims against them.  ECF No. 374.

## LEGAL STANDARD

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019).  "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the portions of the record and the evidence that demonstrate the absence of a genuine dispute of material fact.  *Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)).  After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record "specific facts" showing that there is a genuine dispute of material fact for trial.  *Celotex*, 477 U.S. at 324.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]"  *Anderson*, 477 U.S. at 252.

The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor."  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate

ORDER - 7

1  inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*,

2  477 U.S. at 255.

3  **DISCUSSION**

4  The City Defendants argue that the Estate's claims are time barred by RCW

5  4.16.350, and that they are immune from liability per RCW 18.71.210.  ECF No.

6  374 at 2.

7  **I.    RCW 4.16.350[3]**

8  RCW 4.16.350 provides that

> Any civil action for damages for injury occurring as a
> result of health care . . . shall be commenced within three
> years of the act or omission alleged to have caused the
> injury or condition, or one year of the time the patient or
> his or her representative discovered or reasonably should
> have discovered that the injury or condition was caused by
> said act or omission, whichever period expires later.

13  "The statute of limitations is an affirmative defense on which the defendant bears

14  the burden of proof."  *Young Soo Kim v. Choong-Hyun Lee*, 300 P.3d 431, 433

15  (Wash. Ct. App. 2013).  "Summary dismissal under a statute of limitations should

16  be granted solely when the pleadings, depositions, interrogatories, admissions and

---

18  [3] In diversity jurisdiction cases, state statutes of limitations apply.  *Albano v. Shea

19  Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011); *Alonzo v. ACF Property

20  Mgmt., Inc.*, 643 F.2d 578, 580 (9th Cir. 1981).

ORDER - 8

1    affidavits in the record demonstrate that there is no genuine issue of material fact

2    as to when the statutory period commenced."  *Webb v. Neuroeduc. Inc., P.C.*, 88

3    P.3d 417, 419 (Wash. Ct. App. 2004).  "In order to defeat a motion for summary

4    judgment based on the statute of limitations, malpractice claimants must provide

5    some evidence that the defendant's negligent act occurred within the limitations

6    period."  *Williams v. Gillies*, 495 P.3d 862, 864 (Wash. Ct. App. 2021) (citing

7    *Young Soo Kim*, 495 P.3d at 864).

8        It is undisputed that any care attributable to the City Defendants occurred on

9    September 7, 2017.  ECF No. 375 at 2-3 ¶ 2-6; ECF No. 388 at 2-3 ¶ 2-6.  The

10   Estate did not commence its action against the City Defendants until May 24,

11   2021.  ECF No. 117.  The Estate does not argue that its action against the City

12   Defendants fell within of the three-year limit, but argues that RCW 4.16.350's

13   discovery rule applies.  ECF No. 387 at 3-16.

14            *A.  Discovery Rule*

15       The discovery rule extends the deadline to file medical malpractice actions

16   to within one year of when the plaintiff "discovered or reasonably should have

17   discovered" that the injury was caused by the act or omission.  *Adcox v. Children's*

18   *Orthopedic Hosp. & Medical Ctr.*, 864 P.2d 921, 933 (Wash. 1993).  "The

19   question of when the elements of a cause of action should have been discovered to

20   begin the running of the statute of limitations is a question of fact."  *Webb*, 88 P.3d

ORDER - 9

at 419-20.  "If the plaintiff has that information, 'the statute will run even if she is advised by a physician or an attorney that she has no cause of action.'" *Barrowman v. Wright Med. Tech. Inc.*, No. C15-0717JLR, 2017 WL 4882654, at *3 (W.D. Wash. Oct. 30, 2017) (quoting *Gevaart v. Metco Cosntr. Inc.*, 760 P.2d 348, 350 (Wash. 1988)) (hereinafter *Barrowman II*).[4]

The Court first addresses the City Defendants' argument that the evidence leaves no genuine dispute of fact as to whether the Estate should have discovered its claim against them at least as early as June 2019.  ECF No. 374 at 8.  The Court then considers the Estate's argument that another facially logical explanation for its damages raises a jury question over whether it should have discovered a claim against the City Defendants.[5]  ECF No. 387 at 6-7.

---

[4] *Barrowman II* is an order denying reconsideration of an earlier order, found at *Barrowman v. Wright Med. Tech. Inc.*, No. C15-0717JLR, 2017 WL 4161688 (W.D. Wash. Sept. 19, 2017) (hereinafter *Barrowman I*).

[5] The Estate also argues that intentional concealment requires the statute of limitations be tolled.  ECF No. 387 at 8-15.  The statute of limitations is "tolled upon proof of intentional concealment until the patient or the patient's representative has actual knowledge of the concealment."  *Cox v. Oasis Physical Therapy, PLLC*, 222 P.3d 119, 124 (Wash. Ct. App. 2009).  The Estate points to no

ORDER - 10

1

i.     Evidence of Discovery

2     To determine when the Estate should have "reasonably suspect[ed] that a

3 specific wrongful act has occurred[,]" it is necessary to first define the factual basis

4 of the Estate's claim against the City.  *Barrowman II*, 2017 WL 4882654, at *3.

5 The City Defendants characterize the Estate's claim against them as based upon

6 "the administration of IV epinephrine to Jonny Torres[.]"  ECF No. 374 at 10.  The

7 City Defendants argue that it is undisputed that the Estate knew the medical

8 responders used IV epinephrine when treating Torres since at least June 17, 2019,

9 therefore the time to file suit expired June 17, 2020.  ECF No. 374 at 8.  The City

10 Defendants suggest that knowledge of the mere fact that IV epinephrine was used

11 is notice of a potential claim against it.

12     Indeed, it was these ambulance records that sparked KSD's efforts to amend

13

_____

14 proof of intentional concealment and the argument more directly alleges that the

15 City Defendants failed to provide accurate and complete information because

16 Day's supplemental narrative, discussed in more detail below, was not produced

17 until a later date.  ECF No. 387 at 10-11.  The cases the Estate relies upon, like

18 *Winbun v. Moore*, do not explore the doctrine of intentional concealment.  18 P.3d

19 576, 582 (Wash. 2001).  The Court finds no intentional concealment on the part of

20 the City Defendants in the evidence presented.

ORDER - 11

its answer to assert fault against the City.  ECF No. 91 at 3.  KSD presented the

records to Dr. David Cornfield, a pediatric intensivist.  ECF No. 91 at 3 ¶ 3.  On

May 14, 2020, Dr. Cornfield told KSD his opinion that the medical responders

were negligent.  ECF No. 91 at 3 ¶ 3.  However, KSD did not act upon

Dr. Cornfield's opinion, and instead hired Dr. Steven Simons, a pulmonologist.

ECF No. 91 at 4 ¶ 5.  On June 18, 2020, Dr. Simons told KSD his opinion that the

medical responders were not negligent.  ECF No. 91 at 4 ¶ 6.  KSD abandoned the

theory and told opposing counsel it would not be pursuing a third-party fault

defense.  ECF No. 90 at 3; ECF No. 92-2 at 36:10-14.

On January 28, 2021, the Estate disclosed experts Dr. Roger Katz, a

pediatric allergist and immunologist, and Dr. William Smock, an emergency

medicine expert.  ECF No. 91 at 4-5 ¶ 7.  Contrary to Dr. Cornfield's opinion, the

Estate's experts considered the ambulance records but did not conclude that the

medical responders were negligent.  ECF No. 93-3 at 15; ECF No. 376-3 at 8, 14.

KSD then disclosed their own emergency medicine expert, Dr. Fred Abrahamian.

ECF No. 91 at 5 ¶ 8.  On February 2, 2021, Dr. Abrahamian told KSD his opinion

that the medical responders were negligent.  ECF No. 91 at 5 at ¶ 9.  KSD returned

to Dr. Cornfield and asked that he prepare an expert report regarding the medical

responders, which he did, dated February 10, 2021.  ECF No. 91 at 6 ¶ 10; ECF

No. 91-4.

ORDER - 12

Dr. Cornfield's February 10, 2021 report explains that "[s]uch a treatment, both the dose and rate of administration is both highly unusual and nonstandard in the presence of a perfusing heart rate and rhythm."  ECF No. 91-4 at 3.  This revelation prompted KSD to seek leave to amend its answer to assert as a defense the fault of the medical responders.  ECF No. 90.  On May 18, 2021, Judge Peterson granted leave to amend.[6]  ECF No. 115.

In short, KSD, through experts, reached the conclusion that the medical responders were negligent for using IV epinephrine with only the ambulance reports.  That the Estate's experts had not come to the same conclusion does not prevent the discovery rule from running, because "[t]he key consideration under the discovery rule is the factual, as opposed to the legal, basis of the cause of action."  *Adcox*, 864 P.2d at 933; *see also Barrowman II*, 2017 WL 4882654, at *3.  However, the opposite is also true.  "[A] mere inquiry by the plaintiff or her attorney into a possible cause of action is not enough to establish, as a matter of law, that the plaintiff discovered all the essential elements of that action."  *Olson v.*

---

[6] Judge Peterson further granted leave for the Estate to amend its complaint to add the City Defendants.  ECF No. 115 at 21.  Judge Peterson reserved consideration of "any subsequent motion practice related to the statute of limitations at the appropriate time."  ECF No. 115 at 21.

ORDER - 13

1  *Silverling*, 758 P.2d 991, 995 (Wash. Ct. App. 1988).  An expert's opinion that

2  there is no cause of action will not prevent the discovery rule from triggering, and,

3  counterfactually, another party's expert's opinion that a cause of action exists does

4  not necessarily mean that the rule is triggered.

5        The factual basis of the Estate's claim against does not begin and end with

6  the fact that the medical responders used IV epinephrine.  "To discover a breach in

7  a medical malpractice action . . . the plaintiff need only have had, or should have

8  had, information that the provider was possibly negligent."  *McFadden v. Sound*

9  *Inpatient Physicians, PLLC*, No. 72708-7-I, 2015 WL 6873463, at *2 (Wash. Ct.

10 App. Nov. 9, 2015) (quotations omitted) (citing *Zaleck v. Everett Clinic*, 802 P.2d

11 826, 828 (Wash. Ct. App. 1991)).

12       The circumstances surrounding the medical responders' use of IV

13 epinephrine is relevant factual information for the Estate's claim.  Later-discovered

14 information may have been needed to put the Estate on reasonable notice of a

15 possible claim against the City.  The Estate highlights Day's supplemental

16 narrative that it did not receive until June 28, 2021.  ECF No. 384-1 at 2; ECF No.

17 387 at 9; ECF No. 388 at 8 ¶ 25; ECF No. 395-1 at 14:3-17.  The supplemental

18 narrative tends to suggest that Day may have made the decision to administer IV

19 epinephrine based on insufficient information.  ECF No. 384-1 at 2.

20       Further, according to depositions of Day, taken September 15, 2021, and

ORDER - 14

Marsh, taken August 25, 2021, the ambulance records are inaccurate.[7]  Torres's

blood pressure is inaccurately noted in the narrative.  ECF No. 389-6 at 41:7-16.

His pulse oximetry reading of 60 at 4:54 p.m. is noted as "at room air" but he was

actually on oxygen at the time.  ECF No. 389-6 at 130:14-17.  The report

inaccurately indicates that the IV was established, epinephrine pushed, and

DuoNeb administered within one second of each other.  ECF No. 384-2 at 115:1-9.

Observations of Torres's presentation in the report do not correlate with Marsh's

observations.  ECF No. 384-2 at 115:10-17.  The time at which the medical

responders administered IV epinephrine, compared to when compressions were

given, is "very inaccurate" and "very confusing" according to Day.  ECF No. 384-

3 at 168:13-169:6.  In light of these comments, the facts the Estate discovered upon

receipt of the ambulance records were likely inaccurate, and the true factual basis

---

[7] The Estate explains that "[t]he city defendants have also admitted the following

parts of their ambulance records are inaccurate" and points to fifteen specific

instances of inaccuracy.  ECF No. 387 at 10 n.3.  However, the Estate does not

"support the assertion by . . . citing to particular parts of materials in the record" as

required by Fed. R. Civ. P. 56(c).  The Estate provides some excerpts of Day and

Marsh's depositions, upon which the Court relies, among other excerpts in the

record.

ORDER - 15

of its claim would not have been discovered until much later.[8]

ii.    Another Facially Logical Explanation

A plaintiff may demonstrate that he was not unreasonable in failing to discover medical negligence where "another 'facially logical explanation' for the injury exists." *Webb*, 88 P.3d at 420 (quoting *Winbun*, 18 P.3d at 582). In other words, "[a] plaintiff has no duty to seek out evidence of medical negligence if another 'facially logical explanation' for the injury exists.'" *Id.* This principle, articulated by the Washington Court of Appeals in *Lo v. Honda Motor Co.*, holds that "the day has not yet come when attorneys must automatically suspect medical malpractice to be a proximate cause of every adverse medical outcome." 869 P.2d

---

[8] The Estate's failure to depose Day and Marsh earlier is not, in and of itself, dispositive of their claims. In *Winbun*, the Washington Supreme Court rejected the notion that "knowledge the plaintiff presumably would have discovered, if she had timely made the necessary inquiry, must be imputed to the plaintiff as a matter of law." 18 P.3d at 582. Similarly, here, the Court declines to impute facts discovered in the Day and Marsh depositions to the Estate due to their failure to depose Day and Marsh earlier. The relevant inquiry is whether the Estate exhibited due diligence in pursuing its claims, and, as the *Winbun* court explained, "due diligence [is] a question for the trier of fact." *Id.*

1114, 1122 (Wash. Ct. App. 1994).

The Estate's diligence in discovering its available causes of action must be examined in light of the fact that it believed KSD's negligence to be the sole cause of its injuries.  ECF No. 387 at 6.  The Estate highlights medical opinion testimony supporting its negligence claim against KSD.  ECF No. 387 at 7.  The Estate argues that its claims against KSD were more apparent than those against the City Defendants, and sufficed as a facially logical explanation for Torres's death.  ECF No. 387 at 8.

The City Defendants rely on *Barrowman*, a Western District of Washington case in which the plaintiffs, pursuing a claim against a medical device manufacturer, sought to amend their complaint to add as a defendant the doctor who installed the medical devices at issue long after the statute of limitations had expired.  *Barrowman II*, 2017 WL 4882654, at *2-3.  The medical device manufacturers asserted the doctor's negligence as an affirmative defense.  *Id.* at *2-4.  The plaintiffs moved to amend their complaint to add the doctor as a defendant after the medical device manufacturers disclosed an expert report on the doctor's negligence.  *Id.*  The *Barrowman* court discussed *Lo*, but found that amendment would be futile because the expert report disclosed no new facts triggering a discovery period, and that the medical device manufacturers had alleged the doctor's negligence years prior, giving notice of a potential claim.

*Barrowman I*, 2017 WL 4161688, at *7.  The *Barrowman* court declined to extend *Lo* to the facts of that case specifically because "Plaintiffs here claim to have diligently explored—and dismissed—medical negligence as a potential cause of action" before the discovery period had expired.  *Id.*

The Estate does not similarly claim here.  As explained above, the facts available to the Estate before KSD raised an affirmative defense at the City Defendants were marred by an inaccurate report.  While the Estate's experts considered the ambulance report and did not identify potential negligence, the Estate acted diligently upon the KSD Defendants' assertion of an affirmative defense against the City Defendants.

An overarching principle for application of the discovery rule requires consideration of the plaintiff's due diligence, and as the Washington Supreme Court explained in *Winbun*, "due diligence [is] a question for the trier of fact."  18 P.3d at 582 (citing *Lo*, 869 P.2d at 1122).  The *Winbun* court's finding that "[f]rom the medical records that [the plaintiff] received, it was not readily apparent that [the later-added defendant's] conduct [caused injury]" is applicable to this case.  *Id.* at 582-83.  The ambulance records were scarce and inaccurate, and the Estate was "faced with a 'facially logical explanation' for [its] injuries."  *Id.* at 582.

The City Defendants have failed to demonstrate the absence of a genuine dispute of fact as to when the Estate should reasonably have discovered that the

ORDER - 18

1    City Defendant's acts or omissions caused the Estate's injury. *Webb*, 88 P.3d at

2    419. The Estate has presented sufficient evidence to create a genuine issue of

3    material fact that it filed its claim earlier than the discovery rule's one year

4    deadline. *Williams*, 495 P.3d at 864. The mere inclusion of IV epinephrine in the

5    ambulance records does not take the question of reasonable discovery from the

6    jury. Using IV epinephrine is not automatically a tort; it is the context in which it

7    is used that may constitute a tort. A jury may decide that the Estate reasonably

8    should have discovered its claim when it received the ambulance records, when it

9    received Day's supplemental narrative, or when it deposed Day and Marsh, and

10   may consider KSD's potential negligence as a sufficient facially logical

11   explanation for Torres's death, thereby alleviating any duty to investigate the City

12   Defendants' potential medical negligence.[9]

13

14   [9] The Estate briefly raised at the hearing and in its response that filing a claim prior

15   to discovering sufficient information would run counter to Fed. R. Civ. P. 11. ECF

16   No. 387 at 4; *see also Winbun*, 18 P.3d at 583. The Estate lodged its claims against

17   the City Defendants on May 24, 2021, before receiving Day's supplemental

18   narrative or deposing relevant witnesses. The Estate sought to amend its complaint

19   in response to KSD's efforts to amend its answer, and it did so to "eliminate the

20   empty chair defense, and allow all issues to be resolved on the merits." ECF No.

ORDER - 19

## II.    RCW 18.71.210

Paramedics in Washington are granted qualified immunity by statute for acts

and omissions performed during emergency medical services.  *Marthaller v. King*

*County Hosp.*, 973 P.2d 1098, 1101 (Wash. Ct. App. 1999).  RCW 18.71.210(1)

provides that

> No act or omission of any . . . paramedic . . . , done or
> omitted in good faith while rendering emergency medical
> service under the responsible supervision and control of a
> licensed physician or an approved medical program
> director or delegate(s) to a person who has suffered illness
> or bodily injury shall impose any liability upon:
>
> (a) The . . . paramedic . . . ;
> . . .
> (g) Any federal, state, county, city, or other local
> governmental unit or employees of such a
> governmental unit.

---

92 at 7.  The inquiry under Fed. R. Civ. P. 11 is separate from that of the discovery

rule.  The Estate's allegations against the City Defendants were made to the best of

counsel's knowledge, information, and belief at the time, and were not meritless or

presented for improper purpose.  Fed. R. Civ. P. 11(b)(1)-(4); *see also Townsend v.*

*Holman Consulting Corp.*, 929 F.3d 1358, 1364 (9th Cir. 1990) ("[I]f a lawyer

discovers that his client has a potential cause of action only a short time before the

statute of limitations will expire, a more cursory inquiry will be tolerated than

when he has ample time to investigate.").

ORDER - 20

Under the statute, paramedics are immune from liability for simple negligence as

long as they act in good faith. *Marthaller*, 973 P.2d at 1101.

The City Defendants argue that they are immune from suit because Day,

Marsh, Cook, and Johnson are all paramedics as defined by statute, and the Estate

sues the City solely in its capacity as operator of emergency medical services.

ECF No. 374 at 11. The Estate does not contest that the City Defendants are

within the category of persons anticipated by the statute or that the emergency care

rendered to Torres at least categorically falls within the protection of the statute.

*See* ECF No. 387 at 15-20. However, the Estate argues that the City Defendants

are not entitled to statutory immunity because they exceeded their "authorized

scope of care" and because their acts or omissions while treating Torres constitute

gross negligence, which the statute does not protect. ECF No. 387 at 18-19.

### A. Scope of Care

The Estate argues that the care the City Defendants gave Torres was not

"under the responsible supervision and control of a licensed physician or an

approved medical program director or delegate(s)[,]" which is a prerequisite to

statutory immunity. RCW 18.71.210(1). The Estate argues that state regulations

give paramedics authorization for their operations, specifically, WAC 246-976-

182, which provides as follows:

> (1) Certified EMS personnel are only authorized to
> provide patient care:

. . .
      (c) Within the scope of care that is:

           (i) Included in the approved instructional guidelines/curriculum for the individual's level of certification; or
           (ii) Included in approved specialized training; and
           (iii) Included in state approved county MPD protocols.

      (2) If protocols and regional patient care procedures do not provide off-line direction for the situation, the certified person in charge of the patient must consult with their online medical control as soon as possible. Medical control can only authorize a certified person to perform within their scope of practice.

      (3) All prehospital providers must follow state approved triage procedures, regional patient care procedures and county MPD patient care protocols.

The Estate contends that RCW 18.71.210's prerequisite that paramedics operate "under the responsible supervision and control . . . an approved medical program director" equates to adherence to WAC-mandated protocols.

      The Estate provides the Benton Franklin Counties Pre-Hospital Patient Care Guidelines, revised Jun 2016 ("PCGs"). ECF No. 389-1. The introduction to the protocols explains that "[a]ll EMS activities are supervised by the County Medical Program Director . . . whose EMS authority includes recommending certification/rectification of EMS personnel, training, and the development of written protocols that specify the scope and practice of all EMS personnel in this

ORDER - 22

bi-county area."  ECF No. 381-1 at 3.

The PCGs "define the scope of practice of all EMS personnel" and provide "a broad range of options in the management of patients at the scene."  ECF No. 389-1 at 3.  The introduction explains that the written protocols "cannot cover every situation that will be encountered in the field" and that "the EMT should not be encumbered by requirements for immediate approval by Medical Control[.]"  ECF No. 389-1 at 3.  The introduction indicates that "[a]ppropriate documentation of any deviation in protocols is expected."  ECF No. 389-1 at 3.

The PCGs include a protocol for pediatric asthma, which indicates that epinephrine should be administered after Albuterol, Ipatropium Bromide or DuoNeb, and limited to an amount of "0.01 mg/kg of 1:1,000 SQ, (max: 0.3 cc)."  ECF No. 389-1 at 6.

The City Defendants do not argue that the protocol for pediatric asthma is inapplicable, but offer the deposition testimony of Dr. Kevin Hodges, the County Medical Program Director, who authored the protocols, to explain that the use of IV epinephrine on Torres was not a deviation from the protocols or error.  ECF No. 394 at 8-9.  Dr. Hodges explains that the method of administering epinephrine, subcutaneously or intravenously, is sometimes irrelevant where a patient is in an extreme medical emergency.  ECF No. 395-2 at 54:1-9.  Dr. Hodges explains that the protocols anticipate and allow the treatment that the medical responders gave

Torres.  ECF No. 395-2 at 54:8-9.

While Dr. Hodges testifies that the IV epinephrine given was within protocol, Marsh and Day testified that it was not.  ECF No. 389-7 at 6:8-12; ECF No. 389-6 at 117:3-9.  Day testifies that he decided to use IV epinephrine before departing in the ambulance, ECF No. 389-6 at 103:6-10, that he did not explicitly document in plain terms that he deviated from the protocol, but did record that he used IV epinephrine, ECF No. 389-6 at 118:1-119:3, and that he did not call the hospital before administering IV epinephrine.  ECF No. 389-6 at 107:7-22.

The Estate asserts that "[t]he law in Washington is clear:  first responders must operate under the authorized scope of care defined by state-approved protocols."  ECF No. 387 at 16.  However, it is not clear from case law that strict adherence to protocols is necessary for RCW 18.71.210(1) to take effect.  The relevant language from the statute requires that the medical responders operate "under the responsible supervision and control of a licensed physician or an approved medical program director or delegate[.]"  RCW 18.71.210(1).

The only case the Estate offers in support is *Samuels v. Multicare Health System*, No. 51827-9-II, 2019 WL 4849288 (Wash. Ct. App. Oct. 1, 2019), *review denied* 458 P.3d 772 (Wash. 2020).  There, the plaintiff pursued medical negligence claims based upon the defendant paramedics' alleged failure to apply prehospital stroke triage procedures to identify her stroke symptoms.  *Id.* at *1.

ORDER - 24

The Washington Court of Appeals affirmed summary judgment, finding statutory immunity under RCW 18.71.210. *Id.* at *5. The court considered the plaintiff's argument that the stroke protocol was not applied as required by the Washington Administrative Code. *Id.* The court did not consider whether the paramedics' alleged failure to contact the medical program director precluded statutory immunity because the undisputed evidence showed that "the protocols governed the first responders' interaction with [plaintiff] and they acted within those protocols . . . ." *Id.* at *6.

The manner in which the Washington Court of Appeals rejected the plaintiff's argument is instructive. The court wrote,

> Samuels argues that [the stroke protocol] was not administered to her . . . . Even assuming these facts in the light most favorable to Samuels, they do not create any genuine issues of material fact of gross negligence based on this record.

*Id.* at *5. Therefore, the *Samuels* court considered any departure from the relevant protocols only as far as the departure was relevant evidence of gross negligence, which is not protected, as explained below.

The *Samuels* court's application of RCW 18.71.210 was made in light of "the policy underlying the statute[,]" which is " intended . . . 'to protect first responders from the unduly inhibiting effect the fear of personal liability would have on the performance of their professional obligations.'" *Id.* (quoting

ORDER - 25

1   *Marthaller*, 973 P.2d at 1101) (alterations and internal quotations omitted).  The

2   court explained that plaintiff's interpretation of RCW 18.71.210 "would lead to

3   absurd results that would defeat qualified immunity and permit liability even where

4   the first responders acted in good faith and without gross negligence."  *Id.* at *7.

5       The theory that the Estate now pursues would be counter to the purposes of

6   RCW 18.71.210, and other Washington law, as well.  The Estate, although not

7   explicitly, essentially seeks to impose negligence *per se* against paramedics for

8   anything less than strict adherence to protocols.  The Court declines to recognize

9   the theory.  First, the PCGs are not written in a manner indicating that any

10  deviation therefrom without prior approval equates to the failure to operate under

11  the supervision of the medical director or constitutes gross negligence.  *See* ECF

12  No. 389-1 at 3 ("in situations the protocols do not specifically address, or where

13  there is a need for immediate intervention . . . the EMT should not be encumbered

14  by requirements for immediate approval by Medical Control or destination hospital

15  physician.").

16      Second, outside of particular circumstances, "since 1986 Washington has

17  eliminated negligence *per se* for the violation of a regulation but allows the

18  violation of a regulation to be considered as evidence of negligence."  *Walter Fam.*

19  *Grain Growers, Inc. v. Foremost Pump & Well Servs., LLC*, 506 P.3d 705, 711

20  (Wash. Ct. App. 2022) (citing RCW 5.40.050); *Gerlach v. Cove Apts., LLC*, 471

ORDER - 26

P.3d 181, 193 (Wash. 2020).  Insofar as a deviation from the PCGs may impose

liability, the deviation would only be evidence of negligence, and the City

Defendants are immune from negligence.

Finally, "[t]he doctrine of negligence *per se* is not a separate cause of action,

but creates an evidentiary presumption that affects the standard of care in a cause

of action for negligence."  *Dent v. NFL*, 968 F.3d 1126, 1130 (9th Cir. 2020).

Therefore, RCW 18.71.210(1)'s admonition that paramedics are immune from

"simple negligence" would extend to negligence *per se*.  *Marthaller*, 973 P.2d at

1100.

There remains no genuine dispute of fact that the City Defendants operated

under the responsible supervision of the Medical Director when rendering care to

Torres, even if they did not strictly adhere to the step-by-step instructions of the

asthma protocol.  The Estate may not overcome statutory immunity premised

solely upon the City Defendants' alleged departure from PCGs.  The City

Defendants may only be held liable for the departure if the departure constitutes

gross negligence, which the Court next considers.

### B. Gross Negligence

RCW 18.71.210(5) provides that "[t]his section shall not apply to any act or

omission which constitutes either gross negligence or willful or wanton

misconduct."  "Gross negligence" is "negligence substantially and appreciably

greater than ordinary negligence" and includes the "failure to exercise slight

care[.]" *Nist v. Tudor*, 407 P.2d 798, 803-04 (Wash. 1965). The Washington

Supreme Court has instructed as follows:

> To survive summary judgment in a gross negligence case, a plaintiff must provide substantial evidence of serious negligence. In determining whether the plaintiff has provided substantial evidence, the court must look at all the evidence before it, evidence that includes both what the defendant failed to do and what the defendant did. If a review of all the evidence suggests that reasonable minds could differ on whether the defendant may have failed to exercise slight care, then the court must deny the motion for summary judgment. But if a review of all the evidence reveals that the defendant exercised slight care, and reasonable minds could not differ on this point, then the court must grant the motion.

*Harper v. Dep't of Corr.*, 429 P.3d 1071, 1078 (Wash. 2018).[10] To determine the

degree of care in a particular case, courts must focus their analysis on "the hazards

of the situation confronting the actor." *Id.* at 1077 (citations omitted).

The Estate argues that "both the Estate and KSD's experts agree that the

paramedics' acts and omissions violated the applicable standard of care." ECF No.

---

[10] Somewhat relatedly, paramedics are immune from liability for simple negligence only where "they act in good faith." *Marthaller*, 973 P.2d at 1101 (citing RCW 18.71.210). The Estate does not argue that the City Defendants lacked good faith in rendering care to Torres, and offers no evidence to dispute the finding.

ORDER - 28

387 at 18.  Dr. Smock explains that the medical responders' "failure . . . to follow the treatment protocols, their failure to request a deviation of the treatment protocol, and their failure to report their treatment deviation constitutes a gross deviation of pre-hospital emergency medical care."  ECF No. 376-4 at 8 ¶ 4. Dr. Cornfield opined that IV epinephrine in Torres's case was "a dangerous and reckless strategy[.]"  ECF No. 389-9 at 3-4.

The Estate's proffer of evidence that the paramedics failed a standard of care is directed at the incorrect standard.  To deny summary judgment, the Court must find that "reasonable minds could differ on whether the defendant[s] may have failed to exercise slight care[.]"  *Harper*, 429 P.3d at 1078.

It is undisputed that the paramedics acted swiftly to take vitals, administer CPR, and to intubate Torres.  ECF No. 386-6 at 41:7-43:16, 52:25-53:25, 55:2-7. According to Day's deposition testimony, he did not believe that subcutaneous epinephrine would "have any affect" before arriving at the hospital, which is why he administered IV epinephrine.  ECF No. 386-6 at 55:17-22.  According to Marsh, he suggested IV epinephrine because he "didn't think [they] had ten minutes of him still being conscious, as [Torres] was looking pretty bad."  ECF No. 389-7 at 27:5-19.  The paramedics "felt especially with the severity of his asthma and also the fact that his heart rate was hovering around 60 at that point, he was on the border of being bradycardic, [and they] felt the IV [epinephrine] was appropriate."

ORDER - 29

1   ECF No. 389-7 at 27:20-28:3.

2       The *Marthaller* court was presented with similar evidence.  973 P.2d at

3   1100, 1102.  There, an expert testified that the defendant paramedics failed the

4   appropriate standard of care for endotracheal intubation, but the Washington Court

5   of Appeals found statutory immunity because there was no dispute that the

6   defendant paramedics acted with good faith.  *Id.*; *see also Samuels*, 2019 WL

7   4849288, at *3 (finding statutory immunity although the plaintiff offered expert

8   testimony from a stroke expert and an emergency medicine expert as to the

9   standard of care).  A similar result was reached in *Estate of Morgan v. North*

10  *Kitsap Fire and Rescue*, where the plaintiff presented the expert opinion of a

11  licensed paramedic who opined that the defendant paramedics breached the

12  standard of care.  No. 30197-1-II, 2004 WL 811952, at *2, 2 n.4 (Wash. Ct. App.

13  Apr. 13, 2004).  The court explained that the opinion "was not sufficient to show

14  that [the paramedic defendant] was grossly negligent or willful or wanton in his

15  actions, the standard set forth in RCW 18.71.210."  *Id.* at *2.

16      While there perhaps remains a genuine dispute, through competing expert

17  testimony, as to whether the City Defendants adhered to the standard of care

18  expected of paramedics, there is no evidence disputing that the paramedics

19  exercised at least "slight care," and the Court finds that "reasonable minds could

20  not differ on this point."  *Harper*, 429 P.3d at 1078.

ORDER - 30

1    Even the experts who have opined that the City Defendants failed the

2    standard of care expected of them did not find a lack of slight care.  Dr. Cornfield

3    opines that "there was no basis for administration of intravenous epinephrine via

4    push[,]" but admits that "the paramedics may have had concerns about the

5    potential efficacy of either intramuscular or subcutaneous epinephrine[.]"  ECF

6    No. 389-9 at 3.  Dr. Smock opines that the City Defendants exhibited a "gross

7    deviation of prehospital medical care" but does not opine that the City Defendants

8    failed to exercise slight care.  ECF No. 376-4 at 3, 8.

9    As Washington courts have consistently held, a plaintiff must demonstrate

10    more than a breach of the applicable standard of care to survive summary judgment

11    under RCW 18.71.210.  If the degree of fault between negligence and gross

12    negligence was always a jury question, statutory immunity would have little

13    significance in the courts.  To allow such claims to go to trial would obviate the

14    purpose of the statute, which is to provide first responders with "immunity from

15    suit" and to shield them from the "fear of personal liability[.]"  *Marthaller*, 973

16    P.2d at 1101.

17    Here, the paramedics acted expeditiously to treat Torres and their decision-

18    making was informed by their observations and training.  Finding no genuine

19    dispute of fact as to whether the City Defendants exercised slight care, statutory

20    immunity is appropriate in this case.

ORDER - 31

## CONCLUSION

The Court grants summary judgment in favor of the City Defendants as to the Estate's claims against the City Defendants.

Accordingly, **IT IS ORDERED:**

1.     The City Defendant's Motion for Summary Judgment, **ECF No. 374**, is **GRANTED**.

2.     All claims against the City Defendants are **DISMISSED WITH PREJUDICE**, with all parties to bear their own costs and attorney fees.

3.     The Clerk's Office shall **ENTER JUDGMENT** in favor of the City Defendants and against the Estate.

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order and provide copies to the parties.

DATED May 31, 2023.


*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 32