FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 28, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ESTATE OF JONNY TORRES, by and through his Personal Representative Manuel Banda; JAMIE VALENCIA, parent of Jonny Torres; MARIA M. TORRES, parent of Jonny Torres, | No. 4:19-CV-05038-MKD |
| Plaintiffs, | ORDER DENYING THE ESTATE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES |
| v. | **ECF No. 382** |
| KENNEWICK SCHOOL DISTRICT NO. 17, a quasi-government agency and agents thereof with knowledge and responsibility; TAMARA VASQUEZ, individually and in her capacity as nurse at Highland Middle School; | |
| Defendants. | |

Before the Court is Plaintiffs the Estate of Jonny Torres, Jamie Valencia and Maria Torres (collectively "the Estate's") Motion for Partial Summary Judgment on Affirmative Defenses. ECF No. 382. On May 18, 2023, the Court held a hearing on the motion. ECF No. 407. Marshall Casey and Marcus Sweetser

ORDER - 1

appeared on behalf of the Estate. Michael McFarland and Rachel Platin appeared on behalf of Defendants KSD and Tamara Brun ("Nurse Brun") (collectively the "KSD Defendants").[1]

This case concerns the death of Jonny Torres ("Torres"), a KSD student who visited Nurse Brun's office and later that day suffered a severe medical emergency resulting in his death. *See* ECF No. 117. The Estate brings state law negligence claims against the KSD Defendants. ECF No. 117 at 20-21. The KSD Defendants, with their Answer, assert a number of affirmative defenses. ECF No. 120 at 25-26.

On April 3, 2023, the Estate moved for partial summary judgment as to certain affirmative defenses. ECF No. 382.

For the reasons stated herein, the Estate's motion is denied.

## BACKGROUND

The factual circumstances underlying this litigation, disputed and undisputed, have been thoroughly briefed in prior motions and orders. The Court

---

[1] Joel Comfort appeared at the hearing on behalf of Defendants City of Kennewick (the "City"), David Day, Anthony Marsh, Mark Cook, and Christopher Johnson (collectively the "paramedics"). ECF No. 407. Since the hearing, the City and the paramedics were dismissed. ECF No. 421.

ORDER - 2

refers to its Orders at ECF Nos. 421, 543, for the factual basis underlying the instant order.

## LEGAL STANDARD

A district court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the portions of the record and the evidence that demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323 (quoting former Fed. R. Civ. P. 56(c)). After the moving party has satisfied its burden to survive summary judgment, the non-moving party must

ORDER - 3

demonstrate with evidence on the record "specific facts" showing that there is a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252. A party may move for summary judgment on part of a claim or defense. Fed. R. Civ. P. 56(a).

The court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird*, 908 F.3d at 459. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." *Anderson*, 477 U.S. at 255.

## DISCUSSION

The Estate moves for summary judgment on the following affirmative defenses:

> E. The damages and injuries claimed by Plaintiffs were caused by the actions and/or inactions of an at-fault non-party – the City of Kennewick.
>
> F. The actions and inactions of the City of Kennewick were the sole proximate cause of the damages and injuries claimed by Plaintiffs herein and/or an intervening/superseding act.

ORDER - 4

ECF No. 382 at 2-3 (quoting ECF No. 120 at 25-26).[2]  The Estate contends that summary judgment is appropriate based on: (1) procedural deficiencies in the affirmative defenses; (2) the lack of factual disputes requiring summary judgment as to the affirmative defenses; and (3) the legal basis of the affirmative defenses.

**A. The KSD Defendants Did Not Waive the Affirmative Defenses as to Fault of the City and the Paramedics**

The Estate argues that the KSD Defendants "waived the affirmative defense of non-party fault, stating it would not assert any non-party was at fault." ECF No. 382 at 4.  To apportion fault to a non-party, a defendant must affirmatively plead the theory as an affirmative defense and identify the non-party. *Afoa v. Port of Seattle*, 421 P.3d 903, 913 (Wash. 2018) (citing Wash. Super. Ct. Civ. R. 12(i)).

On May 24, 2021, the Estate amended its complaint with leave of court, naming the City and the paramedics as defendants. *See* ECF Nos. 115, 117.  On June 1, 2021, the KSD Defendants amended their answer with leave of court, asserting that the City and the paramedics were at fault. *See* ECF No. 115; ECF

---

[2] The Estate also moves to strike affirmative defense (D), which "reserves" the KSD Defendants' right to later amend their answer. ECF No. 382 at 2-3 (quoting ECF No. 120 at 25-26).  This defense is a formality.  Time to amend pleadings has expired, and any amendment must be made with leave of court. Fed. R. Civ. P. 15(a)(2).  The motion as to this issue is denied as moot.

ORDER - 5

No. 120 at 25-26.  The instant briefing was submitted in April and May 2023, before the Court granted summary judgment on the Estate's claims against the City and the paramedics in June 2023.  *See* ECF Nos. 382, 396, 421.

The Estate does not assert procedural deficiency with the affirmative defenses as related to then-parties the City and the paramedics, but argues that KSD has waived defenses based on the fault of any other non-parties.  ECF No. 382 at 4-5.  The KSD Defendants concede that there are no other non-parties at issue, and that their reference to other non-parties was an "error."  ECF No. 390 at 3-4.  Therefore, the Estate's motion as to an affirmative defense asserting the fault of non-parties other than the City and the paramedics is denied as moot.

For clarity, the City and the paramedics might now be considered non-parties as all claims against them have been dismissed.  *See* ECF No. 421.  In any event, the Estate has had notice that the KSD Defendants assert the fault of the City and the paramedics since, at the latest, the KSD Defendants' Motion for Leave to Amend Answer, filed February 11, 2021.  ECF No. 90.  Notice is sufficient and the defense has not been waived.  *See* Fed. R. Civ. P. 8(c); *Rosen v. Masterpiece Mktg. Grp., LLC*, 222 F. Supp. 3d 793, 797-98 (C.D. Cal. 2016) (citations omitted).

ORDER - 6

**B. Causation Remains in Dispute**

The Estate argues that the KSD Defendants cannot prove that the paramedics were (1) the sole proximate cause of, (2) a superseding cause of, or (3) otherwise at fault for Torres's death. ECF No. 382 at 5-9. The Estate fails to offer undisputed facts precluding the KSD Defendants from offering these causation-related defenses at trial.

*1. The Proximate Causes of the Estate's Injuries are Disputed*

The Estate assumes as undisputed that the KSD Defendants' negligence caused Torres's parents to call 911, therefore any injury arising out of the paramedics' treatment is causally traceable to the KSD Defendants. ECF No. 382 at 6-7.

It is a plaintiff's burden to prove that the defendant's breach of a duty was the proximate cause of its injury. *Lowman v. Wilbur*, 309 P.3d 387, 389 (Wash. 2013) (citation omitted). Proximate causation has two elements: cause in fact and legal causation. *Id.* (citation omitted). "Cause in fact refers to the 'but for' consequences of an act—the physical connection between an act and an injury." *Meyers v. Ferndale Sch. Dist.*, 481 P.3d 1084, 1089 (Wash. 2021) (citation omitted).

"A defendant may argue another entity was the sole proximate cause of an injury[.]" *Afoa*, 421 P.3d at 910. A plaintiff's burden is not alleviated when the

ORDER - 7

defendant argues, as a defense, that a third party's negligence was the "sole proximate cause" of the plaintiff's injury.  *See Knight v. Borgan*, 324 P.2d 797, 804-05 (Wash. 1958) (noting that the defendant's affirmative defense that a third party's negligence was the "sole proximate cause" of an injury "did not relieve [the plaintiff] of the burden of proving that [the defendant's] negligence . . . was *a* proximate cause") (emphasis in original).

The Estate argues that "KSD caused an asthmatic event that the paramedics were trying to mitigate[.]"  ECF No. 396 at 3.  The Estate does not cite to the record in support of this argument. Fed. R. Civ. P. 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by citing to materials in the record.  *See also* LCivR 56(c)(1).  Even if the Estate's failure to do so is excused, the Estate's statement of facts offers no facts, disputed or not, indicating that the KSD Defendants' conduct necessitated a 911 call after Torres left school.  ECF No. 383.  The KSD Defendants offer facts related to causation, which the Estate disputes.  ECF Nos. 391, 397.  For example, the KSD Defendants offer the opinions of several experts, "all of whom opine that [Torres's] exercise in PE did not cause his bronchospasm four hours later that day."  ECF No. 390 at 16-17 (citing ECF No. 391 at 20 ¶ 88, 22 ¶ 93, 23 ¶ 96, 24-25 ¶ 101).  The Estate responds to each of these sections with objections and

1  contentions that these facts are disputed.  ECF No. 397 at 14 ¶ 88, 15-16 ¶ 93, 17-

2  18 ¶ 96, 20 ¶ 101.

3        It is genuinely disputed whether the paramedics were the sole proximate

4  cause of Torres's death, or if they were a cause in tandem with the KSD

5  Defendants' alleged breach.  Summary judgment is denied.

6        *2.  Whether the Paramedics Were a Superseding Cause is Disputed*

7        The Estate argues that there is no dispute that the paramedics' response was

8  not a superseding cause of the Estate's injuries.  ECF No. 382 at 7-9.

9        A "superseding cause" is an intervening act that that "produces the injury

10  complained of" and is "not reasonably foreseeable" by the defendant.  *Crowe v.*

11  *Gaston*, 951 P.2d 1118, 1122 (Wash. 1998).  "Whether a third party's intervening

12  act rises to the level of a superseding cause is generally a question of fact for the

13  jury, but it may be determined as a matter of law if reasonable minds could not

14  differ as to the foreseeability of the act."  *Roemmich v. 3M Co.*, 509 P.3d 306, 316

15  (Wash. Ct. App. 2022) (citing *State v. Frahm*, 444 P.3d 595, 601 (Wash. 2019)),

16  *review denied*, 519 P.3d 591 (Wash. 2022).

17        The Estate argues that, as a matter of law, "[m]edical aid as the result of an

18  injury is foreseeable."  ECF No. 382 at 9 (quoting *Lindquist v. Dengel*, 595 P.2d

19  934, 936-37 (Wash. 1979)).  The *Lindquist* rule and its legal implications for the

20  KSD Defendants' affirmative defenses are discussed below.  *See* discussion *infra*

ORDER - 9

Section C.  It is true that the factual foreseeability inquiry is shaped by legal

principles.  *See, e.g., Pacheco v. United States*, 515 P.3d 510, 521 (Wash. 2022)

(foreseeability "can be a question of whether duty exists as a matter of law");

*McKown v. Simon Prop. Grp., Inc.*, 344 P.3d 661, 669 (Wash. 2015) ("[an act may

be] unforeseeable as a matter of law under the prior similar incidents test");

*Schooley v. Pinch's Deli Market, Inc.*, 951 P.2d 749, 755-56 (Wash. 1998) ("the

doctrine of superseding cause" limits foreseeability); *Meyers*, 481 P.3d at 1091

(same); *Campbell v. ITE Imperial Corp.*, 733 P.2d 969, 973 (Wash. 1987) (same);

*Albertson v. State*, 361 P.3d 808, 815 (Wash. Ct. App. 2015) (same).

      For the instant factual analysis, the Estate's burden at summary judgment is

to demonstrate the lack of disputed facts precluding judgment in its favor.  *See

Barnes*, 934 F.3d at 906.  Setting aside the parties' legal disputes, the foreseeability

of the paramedics' response is genuinely in dispute.  KSD presents evidence

indicating that the paramedics deviated from the established protocols, did not

confirm with the medical program director when doing so, and improperly gave

Torres intravenous epinephrine.  ECF No. 390 at 20-21 (citing ECF No. 391 at 13-

16 ¶¶ 63, 65-74).  The Estate disputes some of these facts, ECF No. 397 at 11-12

¶¶ 63, 65-74, although the Estate raised similar facts in opposition to the KSD

Defendants' summary judgment motion, ECF No. 388 at 9-10 ¶¶ 30-39.  In light of

1    these factual disputes, summary judgment is denied as to the KSD Defendants'

2    superseding cause affirmative defense.

3        *3.  Whether the Paramedics Were At Fault is Disputed*

4        In addition to arguing that the paramedics could not be the "sole proximate

5    cause" of the Estate's injuries, the Estate argues it is undisputed the paramedics

6    were no cause at all.  ECF No. 382 at 5-7.

7        If a party proves the fault of a non-party, the jury is to allocate the fault

8    "attributable to each party and relevant non-party."  *Afoa*, 421 P.3d at 908-09

9    (citing RCW 4.22.015, RCW 4.22.070).  Parties are only responsible for damages

10   in proportion to the jury's allocation to their fault.  *Id.* at 909.

11       The only evidence the Estate offers in support is expert testimony that the

12   paramedics' response "reduced [Torres's] chances of survival but did not cause his

13   death."  ECF No. 382 at 7 (citing ECF Nos. 376-3, 376-4).  Again, causation is

14   heavily disputed, and the Court declines to supplant its own review of the evidence

15   for that of the many experts involved in this litigation.  *See Strauss v. Premera*

16   *Blue Cross*, 449 P.3d 640, 642 (Wash. 2019) ("Generally speaking, expert opinion

17   on an ultimate question of fact is sufficient to establish a triable issue and defeat

18   summary judgment.") (citation omitted); *see also* ECF No. 549 at 15-16.

19

20

ORDER - 11

### C. *Lindquist* Does Not Preclude the KSD Defendants' Superseding Cause and RCW 4.22.070 Affirmative Defenses as a Matter of Law

The Estate challenges the legal basis of the affirmative defenses, regardless of the disputed facts.  ECF No. 382 at 5-9; ECF No. 396.  The Estate argues that the paramedics cannot be the superseding cause of, or a party at fault for, the Estate's injuries as a matter of law.  ECF No. 396.  It is undisputed that Torres attended school on September 7, 2017, ran in physical education, went home after school, had a medical emergency, was treated by the paramedics, and died 18 days later.  *See* ECF No. 421 at 3-4; ECF No. 543 at 4-8.  The parties' instant disputes of law may be resolved on these undisputed facts.

At issue is the applicability of *Lindquist v. Dengel*, 595 P.2d 934 (Wash. 1979), and whether it conflicts with the doctrine of superseding cause and apportionment of fault under RCW 4.22.070.

#### 1.  Lindquist *Provides a Rule of Foreseeability and Legal Causation*

In *Lindquist*, the Washington Supreme Court applied the "original tortfeasor rule" articulated in the Restatement (Second) of Torts § 457.  595 P.2d at 936-37.  The rule is:

> If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or a negligent manner.

ORDER - 12

*Id.* at 936-37.  It is a "rule of liability for harm which is foreseeable and within the scope of the risk[.]"  *Id.* at 937 (citation omitted).  "The rationale of the rule, as applied to medical treatment, is that negligent or harmful medical treatment is within the scope of the risk created by the original negligent conduct."  *Id.* at 936 (citation omitted).

Proximate cause includes the element of "legal causation," which is "grounded in policy determinations as to how far the consequences of a defendant's acts should extend."  *Meyers*, 481 P.3d at 1089 (citing *Schooley*, 951 P.2d at 754).  "Legal causation" answers the question of "whether liability should attach as a matter of law given the existence of cause in fact."  *M.N. v. MultiCare Health Sys., Inc.*, 541 P.3d 346, 352-53 (Wash. 2024) (quotation marks and citations omitted).  "Courts evaluate whether 'the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability'" and "weigh 'mixed considerations of logic, common sense, justice, policy, and precedent.'"  *Id.* (quoting *Schooley*, 951 P.2d at 754).  Policy considerations may "compel the recognition of legal causation, so long as cause-in-fact is established under the relevant facts."  *Lowman*, 309 P.3d at 391 (citation omitted).

ORDER - 13

1    Foreseeability is "relevant to both duty[3] and causation." *Pacheco*, 515

2    P.3d at 521.  There are many rules that shape legal causation.  *See, e.g.*, *Schooley*,

3    951 P.2d at 756 (explaining "superseding cause"); *Campbell*, 733 P.2d at 972

4    ("even if the intervening act of the third person constitutes negligence, that

5    negligence does not constitute a superseding cause if 'the actor at the time of his

6    negligent conduct should have realized that a third person might so act.'" (quoting

7    Restatement (Second) of Torts § 447 (Am. L. Inst. 1965))) & 974 ("criminal

8    conduct of a third party does not constitute a superseding cause '[i]f the likelihood

9    that a third person may act in a particular manner is . . . one of the hazards which

10

11

_____

12   [3] The *Lindquist* rule might also be considered relevant to the duty element of a

13   negligence claim.  *See Schooley*, 951 P.2d at 753 ("When a duty is found to exist

14   from the defendant to the plaintiff then concepts of foreseeability serve to define

15   the scope of the duty owed.") (citation omitted).  The foreseeability inquiries of

16   duty and causation are related.  *Meyers*, 481 P.3d at 1091 ("[P]olicy considerations

17   relevant to *duty*, including foreseeability, are the starting points of the legal cause

18   analysis.") (emphasis in original).  Whether considered under duty or legal cause,

19   the *Lindquist* rule's implications for the KSD Defendants' affirmative defenses are

20   the same.

ORDER - 14

makes the actor negligent.'" (quoting Restatement (Second) of Torts § 449 (Am. L. Inst. 1965))).

The *Lindquist* rule is a rule of legal causation, as the *Lindquist* court itself concluded. *See* 595 P.2d at 938 (granting new trial because "the jury was not properly instructed on a crucial aspect of causation"). The rule comes from Section 457 of the Restatement (Second) of Torts, which appears in the Restatement's chapter on causation, Chapter 16. As a rule of legal causation, the *Lindquist* rule establishes when "liability *should* attach as a matter of law[.]" *Christen v. Lee*, 780 P.2d 1307, 1321 (Wash. 1989) (emphasis in original) (citations omitted).

### 2. Lindquist *and the Superseding Cause Affirmative Defense*

The Estate argues that "[t]here is no plausible theory in which a superseding-intervening affirmative defense theory applies under Washington law." ECF No. 382 at 9.

A superseding cause is an intervening cause that (1) "created a different type of harm than would otherwise have resulted," (2) "was extraordinary or resulted in extraordinary consequences," and (3) "operated independently of any situation created by the [tortfeasor's] negligence." *Roemmich*, 509 P.3d at 315 (citation, quotation marks, and emphases omitted). Not every intervening act may be

ORDER - 15

considered a superseding cause, and the inquiry is shaped by doctrines of legal

causation.  *See Campbell*, 733 P.2d at 972-74.

For the purposes of this case, the *Lindquist* rule explains "that negligent

medical treatment is a normal intervening cause, an incident within the scope of

the risks created by the original negligent conduct."  *See Erdman v. Lower Yakima*

*Valley, Wash. Lodge No. 2112 of B.P.O.E.*, 704 P.2d 150, 159 (Wash. Ct. App.

1985) (citing *Lindquist*, 595 P.2d at 936-37; Restatement (Second) of Torts § 457

& cmt. b (Am. L. Inst. 1965)).  More specifically, after a tortfeasor injures

someone, "additional bodily harm resulting from normal efforts of third persons in

rendering aid which the other's injury reasonably requires" is a foreseeable

consequence as a matter of law.  *Lindquist*, 595 P.2d at 936-37.  But each of those

elements—whether the efforts were "normal," made to "render aid," and were

"reasonably required"—are questions of fact for a jury to answer.  *See id.* at 938

(remanding for new trial with proper jury instruction); *see also Henderson v.*

*Tyrrell*, 910 P.2d 522, 542 (Wash. Ct. App. 1996) (approving of a jury instruction

based on *Lindquist*).  These elements comprise the foreseeability test for injury

resulting from the treatment of injury caused by the original tortfeasor's

negligence.  The Estate has not shown that these elements are undisputed, and

1  would rather the Court hold as a matter of law that the KSD Defendants are liable

2  for any subsequent injury simply due to the timeline of events.[4]

3        As explained above, it is disputed whether the paramedics' response was a

4  proximate cause of the Estate's injuries at all.  Further, there are genuine disputes

5  of fact as to whether the paramedics' response was foreseeable under the relevant

6  standard for subsequent medical negligence.  Summary judgment is denied as to

7  the KSD Defendants' superseding cause affirmative defense.

8        *3.*  Lindquist *and the RCW 4.22.070 Affirmative Defense*

9        The Estate argues that the paramedics cannot be an "at fault" party for the

10 purposes of RCW 4.22.070(1), and that no liability may be apportioned away from

11 the KSD Defendants as a matter of law.  *See generally* ECF No. 396.

12       RCW 4.22.070(1) provides in relevant part that in "actions involving fault of

13 more than one entity," the fact finder "shall determine the percentage of the total

14 fault which is attributable to every entity which caused the claimant's damages[.]"

15

16 [4] The Court found in a prior order no genuine dispute that the paramedics had

17 exercised "slight care" when treating Torres and therefore did not commit gross

18 negligence.  ECF No. 421 at 30-31.  The Court does not equate the "slight care"

19 used in the test for gross negligence to the "normal efforts" under *Lindquist* as a

20 matter of law.

ORDER - 17

1  These "entities" may include claimants, non-parties, third parties, and certain

2  entities immune from liability to the claimant.  RCW 4.22.070(1).  Then,

3  "[j]udgment shall be entered against each defendant . . . in an amount which

4  represents that party's proportionate share of the claimant's total damages."  *Id.*

5      The Estate argues that RCW 4.22.070 contradicts the *Lindquist* rule.  ECF

6  No. 382 at 4-6.  The issue is: (1) if the *Lindquist* rule holds the original tortfeasor

7  liable for injuries caused by third persons rendering aid to the injured party; and

8  (2) RCW 4.22.070(1) holds multiple tortfeasors liable for only damages

9  corresponding to their proportionate share of fault, what should a court do when

10  *Lindquist*'s "third person rendering aid" is also one of RCW 4.22.070(1)'s

11  "multiple tortfeasors?"

12      Before RCW 4.22.070, Washington courts imposed joint and several

13  liability on concurrent and successive tortfeasors.  *Washburn v. Beatt Equip. Co.*,

14  840 P.2d 860, 885 (Wash. 1992).  In 1986, the Washington legislature changed this

15  rule in favor of proportional liability, codified at RCW 4.22.070.  *Id.* at 885-86.

16  Part of the argument for doing so was that "responsibility for harm done should be

17  distributed in proportion to the fault of all of the parties involved and not governed

18  by concepts of causation."  *Id.* (quoting Peck, *Washington's Partial Rejection and*

19  *Modification of the Common Law Rule of Joint and Several Liability*, 62 Wash. L.

20

Rev. 233, 235-36 (1987)).  The Washington Supreme Court explained the purpose

of RCW 4.22.070 as follows:

> The statute evidences legislative intent that fault be
> apportioned and that generally an entity be required to pay
> that entity's proportionate share of damages only.  The
> statute also evidences legislative intent that certain
> entities' share of fault not be at all recoverable by a
> plaintiff; for example, the proportionate shares of immune
> parties.

*Id.* at 886.  The change was a significant departure from the prior rule.  *See id.* at

886 n.7 (noting that RCW 4.22.070 amounted to "an exception that has all but

swallowed the general rule" of joint and several liability).

"Principles of common law survive RCW 4.22.070[.]"  *Afoa*, 421 P.3d at

910.  Washington's lower courts have observed that RCW 4.22.070(1) did not

"abrogate[] the common law *Lindquist* rule."  *Henderson*, 910 P.2d at 542 n.17;

*see also Crane v. Swedish Health Servs.*, No. 17-2-27430-5, 2019 Wash. Super.

LEXIS 12299, at *3 (Wash. Super. Ct. Nov. 12, 2019) ("*Lindquist* and RCW

4.22.070 can coexist; foreseeability is the touchstone.").

As the Washington courts instruct, the Court must apply both the *Lindquist*

rule and RCW 4.22.070.  The *Lindquist* rule provides that a negligent actor is

"subject to liability for any additional bodily harm" caused by subsequent medical

negligence.  595 P.2d at 936-37.  But it does not require that the original tortfeasor

be the only one subject to liability for that harm.

ORDER - 19

1    Apportionment of fault is a separate analysis from the determination of

2 which actors were the cause of an injury.  For a negligence plaintiff to succeed at

3 trial, the fact finder must find that the plaintiff suffered an "injury."  *Lowman*, 309

4 P.3d at 389 (citation omitted).  The fact finder must also find that the defendant's

5 breach of duty was the "proximate cause of the injury."  *Id.*  The fact finder must

6 then determine an amount of "damages," which "are the monetary value of the

7 injury or damage proximately caused by the breach of alleged duty."  *Huff v.*

8 *Roach*, 106 P.3d 268, 270 (Wash. Ct. App. 2005).  "Although 'injury' and

9 'damages' are often used interchangeably, an important difference exists in

10 meaning."  *Id.* (citation omitted).  Pursuant to RCW 4.22.070(1), "each tortfeasor

11 is liable only for damages corresponding to its proportionate share of fault as

12 determined by the trier of fact."  *Barton v. Dep't of Transp.*, 308 P.3d 597, 602

13 (Wash. 2013).

14    Principles of legal causation are used to determine which entities are "at

15 fault" under RCW 4.22.070(1).  *See* RCW 4.22.015 ("Legal requirements of causal

16 relation apply both to fault as the basis for liability and to contributory fault.").

17 The statute does not create new rules of causation or change existing rules.  When

18 comparing fault, the jury shall consider "both the nature of the conduct . . . and the

19

20

ORDER - 20

1   extent of the causal relation between such conduct and the damages."[5]  RCW

2   4.22.015.  Legal principles of causation do not control RCW 4.22.070(1)'s

3   instruction to limit the amount of damages that may be awarded against a

4   defendant.  The *Lindquist* rule provides which actors may be subject to liability for

5   an injury, but RCW 4.22.070(1) requires that any damages be apportioned.

6        The Washington legislature provided clear exceptions to several liability,

7   and no exception is applicable to the instant case.  For example, vicarious liability

8   is retained, imposing joint and several liability where concurrent tortfeasors "were

9   acting in concert or when a person was acting as an agent or servant of the party."

10

11   [5] RCW 4.22.015 applies to comparison of fault "under RCW 4.22.005 through

12   4.22.060[.]"  As the Washington Court of Appeals observed, "RCW 4.22.015 was

13   not amended by the 1986 tort reform act to include RCW 4.22.070 in the list of

14   sections to which RCW 4.22.015 applies."  *Gerrard v. Craig*, 836 P.2d 837, 843

15   n.9 (Wash. Ct. App. 1992), *rev'd on other grounds*, 857 P.2d 1033 (Wash. 1993).

16   That court concluded that the failure to amend RCW 4.22.015 was an "omission

17   . . . by oversight rather than design," and that RCW 4.22.015 provides the relevant

18   test for comparison of fault under RCW 4.22.070(1).  *Id.*  The instant reliance on

19   RCW 4.22.015 is offered as evidence of the definition of "fault" under the statute,

20   and is not adoption or rejection of the *Gerrard* court's observation.

ORDER - 21

1  *Johnson v. Recreational Equip., Inc.*, 247 P.3d 18, 24 (Wash. Ct. App. 2011)

2  (quoting RCW 4.22.070(1)(a)).  Common law principles of agency are retained,

3  and if a jury finds a principal-agent relationship, the principal may not allocate

4  fault to its agent.  *Afoa*, 421 P.3d at 911-13.  Other statutes provide exceptions,

5  such as in products liability cases.  *See Johnson*, 247 P.3d at 25-26.

6        State courts of last resort in other jurisdictions have confronted this issue and

7  appear to largely agree that the original tortfeasor rule does not supersede several

8  liability.  The Arizona Supreme Court explained that it had "not expressly

9  adopted[] Second Restatement § 457," but its lower courts had "referred to and

10  arguably relied on" the rule, and it generally follows "sound and sensible" rules

11  from the Restatements "if there is no statute or case law on a particular subject[.]"

12  *Cramer v. Starr*, 375 P.3d 69, 74-75 (Ariz. 2016).  Arizona adopted statutory

13  several liability, with a law similar to RCW 4.22.070.  *See id.* at 75 (discussing

14  A.R.S. § 12-2506).

15       The court explained that "[the original tortfeasor rule] is a doctrine of

16  causation and does not preclude applying [Arizona's several liability statute]."  *Id.*

17  The court cited the Third Restatement's iteration of Section 457, which provides

18  that "[m]odern adoption of pure several liability limits the liability of each

19  defendant liable for the same harm to that defendant's comparative share of the

20  harm."  *Id.* at 75-76 (quoting Restatement (Third) of Torts § 35, cmt. d (2009)).

ORDER - 22

The court found, upon a factual showing that the original tortfeasor rule's conditions are met, "[the defendant] will have proximately caused the enhanced harm, and her liability for such harm will be determined, consistent with [several liability], by the jury's assessment of comparative fault." *Id.* at 76.

Facing a similar argument, the Tennessee Supreme Court concluded that several liability "altered the common-law rules for determining the apportionment of the liability among multiple tortfeasors, [but] did not alter the common-law rules for determining when tortfeasors are liable for the harm they cause." *Banks v. Elks Club Pride of Tenn. 1102*, 301 S.W.3d 214, 221 (Tenn. 2010). The court explained that the original tortfeasor is a proximate cause of injury resulting from subsequent medical negligence, but "is not the sole proximate cause of the plaintiff's indivisible injury." *Id.* at 224. The court explained that "the doctrine of joint and several liability does not apply in cases where the injuries caused by the negligence of the original tortfeasor are enhanced by the subsequent negligence of physicians and other healthcare providers." *Id.* at 226-27. Instead, a defendant may assert the comparative fault of a nonparty's subsequent medical negligence as an affirmative defense to apportion liability. *Id.* at 221, 226-28.

Finally, and succinctly, the Idaho Supreme Court explained that

> because Idaho has adopted comparative fault, the Restatement (Second) of Torts § 457 operates as a general foreseeability rule for any subsequent medical negligence and does not impute liability arising from all subsequent

1
2
3
4

> negligent acts onto the original negligent actor.  Any liability that is the result of subsequent medical negligence may be reduced by the percentage of fault attributable to each party.  This does not affect foreseeability, but rather assigns the jury the task of distributing fault among all liable actors pursuant to [Idaho's comparative fault statute].

5    *Cramer v. Slater*, 204 P.3d 508, 514 (Idaho 2009).  The Estate has not presented,

6    and the Court is unaware of, any contrary case law.

7          In short, the Estate incorrectly reads the *Lindquist* rule to impose joint and

8    several liability on the original tortfeasor where there is subsequent medical

9    negligence.  The *Lindquist* rule does not do so.  It merely states that the original

10   tortfeasor is a proximate cause of subsequent medical negligence—not necessarily

11   the only one.

12         RCW 4.22.070 "had the effect of generally abolishing joint and several

13   liability for concurrent negligence."  *Afoa*, 421 P.3d at 909 (citation and quotation

14   marks omitted).  The Washington Supreme Court called this command "clear and

15   unambiguous."  *Id.* (citation omitted).  To construe the *Lindquist* rule in a manner

16   precluding apportionment would defy the Washington legislature's intent and the

17   Washington Supreme Court's interpretation of Washington law.  Where there are

18   successive tortfeasors, even if one acted while treating an injury caused by the

19   other, "the trier of fact still must determine and apportion the responsibility based

20   upon the varying degrees of culpability and causation among the actors."  *Tegman*

*v. Accident & Med. Investigations, Inc.*, 75 P.3d 497, 503 (Wash. 2003) (quoting Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform*, 16 U. Puget Sound L. Rev. 1, 41 (1992)).

The Estate has failed to show undisputed facts warranting judgment as a matter of law as to the KSD Defendants' affirmative defense that the paramedics are at fault for the Estate's injuries.

## CONCLUSION

For the reasons stated above, the Estate's Motion for Partial Summary Judgment on Affirmative Defenses is denied.

Accordingly, **IT IS HEREBY ORDERED:**

1.    The Estate's Motion for Partial Summary Judgment on Affirmative Defenses, **ECF No. 382**, is **DENIED.**

**IT IS SO ORDERED**.  The District Court Executive is directed to file this Order and provide copies to the parties.

DATED March 28, 2024.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 25